IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


PAUL SOUPHANGTHONG,

    Petitioner,

v.                                  CASE NO. 5:07-cv-00011-RS-AK

JAMES MCDONOUGH,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 1, Petition for Writ of Habeas Corpus, filed by Paul Souphangthong. Petitioner has paid the filing fee. Respondent has filed a response, Doc. 10, and Petitioner has filed a reply. Doc. 12. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the petition be denied.

In his petition, Petitioner, who is serving a life sentence for first-degree murder with a firearm, raises one claim of ineffective assistance of counsel, namely, that counsel failed to present a defense of voluntary intoxication "which was legally available and supported by competent evidence." Doc. 1 at 4. According to Petitioner, counsel's "tactical decision to present the jury with the defense that Petitioner was asleep was patently unreasonable...." Doc. 1, Mem. at 11. Petitioner also complains that when counsel requested a voluntary intoxication instruction, he "did not know the law and was unable to inform the trial court that its ruling that such a defense was abolished did not apply to Petitioner's case." Petitioner has paid the filing fee, the petition is timely, and this claim was exhausted in state court.

**DISCUSSION**

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

>   (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The federal court considering a habeas petition "may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not determinative of clearly established federal law. Instead, this Court must look to the specific holdings of Supreme Court cases themselves. If the Supreme Court has not issued a specific holding on the issue at hand, then the state court's decision is not contrary to or an unreasonable application of clearly established federal law. *Carey v. Musladin*, ____ U.S. ____, 127 S.Ct. 649, 654, 166 L.Ed. 2d 482 (2006).

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id*. at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d

783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

In this case, the state court held an evidentiary hearing on Petitioner's 3.850 motion, which was predicated on these same issues, and wrote a lengthy opinion which was affirmed on appeal. In it, the court found:

> The defendant raises several issues in which he claims his attorney was ineffective. The first two concern issues of theories of defense. The defendant claims that his attorney chose a defense that was based on a lie or falsehood and one that he, the defendant, had never raised with his attorney. This defense was that the defendant was asleep in the backseat of the car when the murder for which he was convicted occurred and that in fact a co-defendant, Phonsavanh Kanjanabout, committed the murder.
>
> According to the testimony of Paul Komarek, trial counsel, the "asleep" theory arose from a letter written to the defendant by another co-defendant, Laddavanh Mouthouta, who told the defendant in his letter that he had told the authorities that Kanjanabout had done the shooting while the defendant was asleep in the car. According to Mr. Komarek's testimony, the defendant also told him at their first meeting on June 14, 2000 that Kanjanabout did the shooting, which allowed trial counsel to develop the "asleep" trial theory. Additionally, Mr. Komarek testified that he does not recall the defendant ever telling him that the "asleep" letter was false. The trial transcript reflects that Mr. Komarek offered this theory of defense very artfully at trial....
>
> The other theory of defense that was available to the defendant, and the one he alleges in his motion that Mr. Komarek should have utilized, was voluntary intoxication. The trial transcript reflects that even without the testimony of the defendant Mr. Komarek elicited testimony that the defendant had been drinking beer and was intoxicated....Additionally, Mr. Komarek requested the trial judge instruct the jury on voluntary intoxication but the trial judge refused to do so citing a recent change in Florida law concerning the applicability of such an instruction. All parties agree that the denial of such an instruction was an

incorrect decision, the defendant, however, further alleges that Mr. Komarek was ineffective in not being prepared to argue the incorrectness of the trial judge's decision in this matter and that in not getting the intoxication instruction his performance was deficient and the defendant was thereby prejudiced under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The defendant cites *Cabrera v. State*, 766 So.2d 1131 (Fla. 2001) in support of his proposition that Mr. Komarek did not sufficiently investigate the voluntary intoxication defense. In reviewing this allegation, the Court must first consider the testimony of Mr. Komarek in support of his initial decision to not rely on the intoxication defense. Mr. Komarek testified that he had several reasons for not relying on this defense. First, based on his approximately thirty years as a member of the Florida Bar and his representation of between ten and twenty first degree and second degree murder clients, he does not feel that voluntary intoxication is a particularly effective defense with juries. In this particular case, he had an alternative defense which was supported by the note one of the co-defendants had sent to the defendant, that being that the defendant was asleep while one of the other co-defendants committed the murder.

A second reason for not arguing the intoxication defense was the video of a robbery the defendant helped commit within minutes preceding the murder. According to Mr. Komarek, the appearance of the defendant in the video did not seem to support an argument that in a period of minutes the defendant became so intoxicated that he could not form the requisite intent to commit murder.

A third reason for not arguing the intoxication defense, according to Mr. Komerak's testimony, was that the co-defendants, while they all testified as to their drinking alcoholic beverages, did not seem to have any trouble with recalling details of the murder, their involvement and the involvement of the defendant. Mr. Komarek testified that he did not feel it wise to argue that the defendant was the only one of the group who was affected to the point of intoxication while the others admitted that they also consumed quantities of beer and had also done drugs.

This Court finds that the reasons given by Mr. Komarek reflects a thorough investigation by him into the reasonableness of voluntary intoxication in this case. The only deficiency was his failure to present the appropriate law to the trial judge in support of the requested jury instruction. In determining whether this resulted in prejudice to the defendant, it becomes necessary to determine whether such deficiency "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."

In examining the reasons given by Mr. Komarek for his reluctance to rely on the

intoxication defense, this Court finds his tactical and strategic decision to rely on the separate defense of the defendant being asleep, and not to rely on an intoxication defense, does not rise to the level requiring reversal as did the facts in *Cabrera*. In *Cabrera*, the Florida Supreme Court found trial counsel's failure to thoroughly investigate the defense of entrapment to warrant reversal. In that case, however, the Court pointed out that "the failure to pursue the entrapment defense constituted ineffective assistance on counsel because 'defense counsel, by her substandard performance, deprived defendant of his **sole** defense and the opportunity to corroborate the defense...." In the case sub judice, the defendant had available to him, and his attorney forcefully argued, another theory of defense which was supported within the record and did not contain the potential problems the intoxication defense presented. Given defense counsel's concerns about the validity of the voluntary intoxication defense and the particularly difficult situation within which he would have to work within it, this Court cannot find that the failure to present voluntary intoxication defense to a jury prejudiced the defendant in this case. It therefore follows that trial counsel's failure to have case law available to the trial judge on the issue of voluntary intoxication does not rise to the level of ineffective assistance of counsel as to require a new trial.

Doc. 10, Ex. V (citations and footnote omitted).

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

With regard to the performance prong of *Strickland*, the court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Id*. at 689-90. To show counsel's performance was unreasonable, a petitioner must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007). "The relevant

question is not what actually motivated counsel, but what reasonably could have motivated counsel." *Id*. When the court "can conceive of a reasonable motivation for counsel's actions," it can deny the claim of ineffectiveness without evidentiary hearing. *Id*. "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*,

466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome."  *Id*.  Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable.  *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between."  *Chandler*, 218 F.3d at 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted.  *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

It is clear from the lengthy recitation of the state court's order, that the court exhaustively reviewed Petitioner's claims and applied the appropriate *Strickland* standard for evaluating them.  Indeed, this Court seldom sees such thorough consideration in this context.  This is not a general criticism of the state courts but a fact which is almost certainly attributable to their overwhelming caseloads and responsibilities.  Be that as it may, the state court's decision is entitled to deference in this case unless it is contrary to or involves an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Having carefully considered the matter, the Court has no hesitation in deferring to the state court's decision.  As the court noted, counsel made a choice between two defenses, and in his estimation, the "asleep" defense was the more reasonable choice for several reasons.  First, one of the co-defendants had sent Petitioner a letter, stating that

Petitioner did not commit the murder because he was asleep at the time and that another co-defendant was actually the perpetrator.  Though the writer of the letter recanted the truthfulness of this letter before and during trial, counsel could hardly ignore a letter which exculpated his client.  Second, the voluntary intoxication defense was tenuous.  To even present the defense to the jury, counsel would have had to affirmatively show that Petitioner was intoxicated "at the time of the offense sufficient to establish that he was unable to form the intent necessary to commit the crime charged."  *Linehan v. State*, 476 So.2d 1262, 1264 (Fla. 1985).  While there was certainly evidence that Petitioner had been drinking and doing drugs before the murder, there was also evidence to negate even allowing counsel to advance the defense.  For example, there was, as the state court noted, video evidence of Petitioner holding a gun and threatening a storekeeper during the commission of a robbery shortly before the murder and testimony from the co-defendants, who were also drinking and doing drugs with Petitioner before the murder, which was specific and detailed.  Though counsel certainly erred in failing to point out that the intoxication defense was theoretically still viable at the time the murder was committed, the two defenses were mutually excludable "since a voluntary intoxication defense is, in effect, an admission that you did the crime but lacked the specific intent to be held criminally responsible," *Rivera v. State*, 717 So.2d 477, 485 (Fla. 1998), and thus, counsel had to choose between the two.  In that situation, the choice of "course A" over "course B" is deficient only if "course A" is unreasonable and a course no competent counsel would have taken.  Under the circumstances, the choice of "course A," the "asleep" defense, was not unreasonable, and the state court's conclusion to that effect is entitled to deference.

## **CONCLUSION**

In light of the foregoing, it is respectfully **RECOMMENDED** that the petition for writ of habeas corpus, Doc. 1, be **DENIED**, and this cause be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this  *15th*  day of April, 2008.

    *s/ A. KORNBLUM*
    **ALLAN KORNBLUM**
    **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**